Wayne G. HAUSER, Appellant,

v.

EQUIFAX, INC., aka Retail Credit Company, Appellee,

and

Physicians Mutual Insurance Company.

No. 78–1765.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1979.

Decided July 3, 1979.

**812**

Lawrence R. Brodkey, Omaha, Neb., for appellant.

David A. Svoboda of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON *, Chief District Judge.

BENSON, Chief District Judge.

Wayne G. Hauser brought this action for damages against Physicians Mutual Insurance Company, his disability insurer, and Equifax, Inc., a consumer reporting agency which, at Physicians' request, prepared an investigative consumer report on Hauser to be used by Physicians in connection with underwriting the disability insurance. Hauser alleged the defendants willfully and negligently failed to comply with the provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and in addition raised several claims under state law. The matter was tried before a jury, and at the close of plaintiff's evidence, the district court[1] granted defendants' motions for directed verdict on all claims against Equifax and on all claims against Physicians except a state law claim for recovery of accrued but unpaid disability insurance benefits. The remaining claim against Physicians was submitted to the jury, and a verdict was returned for plaintiff in the amount of $4,000.00. This appeal was taken from the trial court's grant of the directed verdict on the Fair Credit Reporting Act claims against Equifax and subsequent denial of plaintiff's motion for a new trial as to those claims. We affirm.

Appellant Wayne Hauser, in partnership with his two sons, owned and operated Wayne's Auto Parts, an automobile parts salvage business in Council Bluffs, Iowa. On April 14, 1975, Hauser applied for a total disability insurance policy from Physicians Mutual Insurance Company. The agent who sold the policy asked Hauser the necessary questions and completed the application form for him. The agent had observed Hauser at work on several occasions and designated Hauser's occupation as Class B, which according to Physician's occupational classification guide indicated a mechanic-type position requiring some physical labor.

In the routine processing of the application, Physicians ordered an investigative report on Hauser from Equifax, Inc. The report from Equifax, entitled "Income Inspection Report,"[2] was issued on April 23, 1975, and contained the following remarks:

A. Wayne G. Hauser is the owner of Wayne's Auto Parts. He has been so employed since 1967. This is an auto

---

\* PAUL BENSON, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The Honorable Richard E. Robinson, Senior Judge, United States District Court for the District of Nebraska.

2. It is undisputed that this report is an "investigative consumer report" subject to the requirements of the Fair Credit Reporting Act, since it was prepared "for the purpose of serving as a factor in establishing the consumer's eligibility for . . . insurance to be used primarily for personal, family or household purposes." 15 U.S.C. § 1681a(d).

parts salvage yard, employing three persons. They sell used automobile parts. B. He is a salesman and supervisor. He waits on the walk-in trade who come into this place of business. He also supervises the duties of the other two employees who are his sons. He is not responsible for any dismantling of auto bodies or engines. He takes care of the inventory and a small amount of the bookkeeping. This information was accurate in all material respects, except for the statement that Hauser was not responsible for dismantling auto bodies or engines.

After receiving the Income Inspection Report, Physicians issued a policy to Hauser. In June 1975, Hauser developed severe back pain and was hospitalized from June 18 to July 11. He presented a claim for disability benefits under the policy in late August. The claim form provided by Physicians required statements from both the claimant and his attending physician. Hauser stated on the form that he was a self-employed auto mechanic and that he had been unable to resume his employment. He then forwarded the claim form to his attending physician, who certified that Hauser had been totally disabled while hospitalized, but was only partially disabled following his release from the hospital.

Physicians paid Hauser total disability benefits for the period of his hospitalization, but on September 10, 1975, denied the claim for continued disability payments for the reason that the physician had not certified Hauser to be totally disabled. Soon thereafter, Hauser called Physicians' Omaha office and spoke to Richard Gleason, a claims adjuster, about his claim for continued benefits. Gleason stated he would check with Hauser's physician to verify that Hauser's disability was only partial.

During or immediately after this telephone call, Gleason retrieved Hauser's application and claim files, and for the first time reviewed the Income Inspection Report prepared by Equifax. After reviewing the files, he ordered a Continuance of Disability Report from Equifax to check on Hauser's activities at that time. Specifically, he requested a determination as to whether heavy lifting was required in Hauser's business.

Gleason then wrote to Hauser's attending physician, asking for verification that Hauser was only partially disabled from performing the duties of his employment, rather than totally disabled. He added, "For your reference, it is our understanding that Mr. Hauser works on a self-employed basis as a salesman and bookkeeper for an auto parts store." Gleason testified he got this understanding from the Income Inspection Report.

The physician responded on September 23, 1975, stating Hauser's complaints were not "adequate to justify a disability at this time in view of the type of work which he does."

Equifax issued the requested Continuance of Disability Report on September 26, 1975. The information in the report was obtained from a personal interview with Hauser at his place of business and upon personal interviews with several of his neighbors. The report accurately stated that Hauser's work required strenuous activity including heavy lifting, that Hauser's back condition prevented him from engaging in such physical activity, and that daily medication made him "dopey" and prevented him from doing even the office work.

Gleason did not request another opinion from Hauser's physician, based on this new information, but merely informed Hauser that his physician had verified the disability was only partial and that Physicians would not pay any further disability benefits.[3]

Hauser subsequently learned from a Physicians employee that Equifax had prepared an investigative report on him prior to the

3. In December 1976, Physicians determined on the basis of documents submitted by Hauser's attorney that Hauser was entitled to post-hospitalization disability payments. Payments were made for several months, but were discontinued when a disagreement arose over the need for periodic certification of continued disability. Hauser commenced this action against Physicians and Equifax in April 1977.

issuance of the disability policy. He telephoned Equifax's Omaha office in July 1976 to inquire about the report. Conrad Larsen, the claims manager, took the call and after establishing that the caller was in fact Wayne Hauser, he disclosed the information contained in the Income Inspection Report. However, Larsen did not reveal the existence of the Continuance of Disability Report, which was prepared in September 1975, and which accurately described Hauser's duties. Larsen explained at trial that the two reports were kept in separate files; the Income Inspection Report was in an underwriting file, and the subsequent Continuance of Disability Report was in a claim file.

Hauser alleged in his complaint that Equifax willfully and negligently violated the provisions of the Fair Credit Reporting Act through (1) failure to adopt reasonable procedures to assure maximum possible accuracy, 15 U.S.C. § 1681e(b); (2) failure to disclose the existence of the Continuance of Disability Report, 15 U.S.C. § 1681g; and (3) failure to conduct a reinvestigation. 15 U.S.C. § 1681i. The district court granted Equifax's motion for directed verdict on these claims because it found Hauser had failed to prove either willfulness or negligence on the part of Equifax.

■ The propriety of granting a motion for directed verdict is to be determined by the same standard both in the trial court and on appeal. The motion should be granted only when the nonmoving party has presented insufficient evidence to support a jury verdict in his favor. *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549, 555 (8th Cir. 1968). In deciding this question, the evidence must be viewed in the light most favorable to the nonmoving party, without assessing credibility. *Parker v. Seaboard Coastline R. R.*, 573 F.2d 1004, 1007 (8th Cir. 1978); *Lisa-Jet, Inc. v. Duncan Aviation, Inc.*, 569 F.2d 1044, 1046 (8th Cir.), *cert. denied*, 439 U.S. 828, 99 S.Ct. 100, 58 L.Ed.2d 121 (1978). In addition, the nonmoving party is entitled to the benefit of all reasonable inferences, that is, inferences which may be drawn from the evidence without resort to speculation. *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 883 (8th Cir. 1978). However, "[w]hen the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided, it should be decided by the court as a matter of law rather than submitted to a jury for its determination." *Id. See Kennedy v. U. S. Construction Co.*, 545 F.2d 81, 82 (8th Cir. 1976); *Gillette Dairy, Inc. v. Hydrotex, Inds., Inc.*, 440 F.2d 969, 971 (8th Cir. 1971).

The Fair Credit Reporting Act does not provide for comprehensive regulation of the consumer reporting industry. Rather it establishes the broad minimum standard of "reasonable procedures" and requires consumer reporting agencies to adopt procedures which meet that minimum standard. See 15 U.S.C. § 1681(b). The Act provides for recovery by a consumer upon a showing of willful or negligent failure to follow reasonable procedures. Upon a showing of negligent noncompliance, a consumer may recover actual damages, costs and attorney's fees. 15 U.S.C. § 1681o. The same recovery, and in addition punitive damages, may be awarded upon a showing of willful noncompliance. 15 U.S.C. § 1681n.

### 1. Accuracy.

Hauser's primary claim is that Equifax willfully and negligently failed to comply with 15 U.S.C. § 1681e(b), which provides:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

■ The fact that the April 1975 Income Inspection Report contained inaccurate information is not in itself sufficient for the imposition of liability, for the Act does not render consumer reporting agencies strictly liable for inaccuracies in a report. *See Austin v. Bankamerica Service Corp.*, 419 F.Supp. 730, 733 (N.D.Ga.1974). There must be a showing that the inaccuracy resulted from the agency's failure to "follow

reasonable procedures to assure maximum possible accuracy."

### A. *Employment Duties.*

In an effort to show that the inaccurate description of his employment duties resulted from failure to follow reasonable procedures, Hauser elicited testimony from two Equifax employees, the investigator who prepared the Income Inspection Report and the manager of the Omaha office. The investigator had no independent recollection of the investigation, and he could not determine from the report itself the amount of time he had spent on the investigation and preparation of the report, or whether he had interviewed his sources face to face or by telephone.[4] His "field notes" were not available as an aid because, pursuant to company policy, he had destroyed them after dictating the report. The investigator did testify, however, that the amount of time required for preparation of an Income Inspection Report is usually twenty minutes to an hour. He estimated that he prepared twelve to fifteen reports each day. The branch manager testified that no time records are kept because the user of a report is billed on the basis of a flat rate, which in 1975 was approximately $7.00 per report. Each investigator is paid a base salary plus mileage expenses, and receives a bonus if his production exceeds the amount of his salary and expenses.

Hauser apparently presented this evidence in an attempt to draw similarities between Equifax's procedures and those which were found to be unreasonable in *Millstone v. O'Hanlon Reports, Inc.*, 383 F.Supp. 269 (E.D.Mo.1974), aff'd, 528 F.2d 829 (8th Cir. 1976). However, we find the facts in the two cases to be materially different.

In *Millstone*, an investigative consumer report was prepared in connection with the consumer's application for automobile insurance. The report contained several derogatory statements relating to the consumer's character, including rumored drug use, participation in demonstrations, eviction from prior residences, and complete lack of discipline of his children, all of which were false. The investigator's only source was a person with a strong bias against the consumer. On the basis of the report, the consumer's application for insurance was denied. The district court found the investigator's actions were "so heinous and reprehensible," "so slip-shod and slovenly," and "so wanton as to be clearly willful non-compliance with the Fair Credit Reporting Act." 383 F.Supp. at 275.

There was virtually no evidence presented in this case which could support a finding that the inaccurate description of Hauser's employment duties resulted from willful failure to follow reasonable procedures. And, although certain of Equifax's procedures may be somewhat questionable, we find insufficient evidence to support a finding that the inaccuracy resulted from negligent failure to follow reasonable procedures.

The information in the Income Inspection Report is not the type of information which would ordinarily be termed adverse to the consumer, and which would require double-checking, especially as compared to the report in *Millstone*. Equifax prepared the report for Physicians' use in underwriting disability insurance for Hauser. The report did not cause a rejection of his application for insurance. Rather, its effect, if any, was to place Hauser's application in a more favorable light.[5] There is no evidence in the record from which it could be reasonably inferred that Equifax should have expected its report to be used for any purpose other than determining Hauser's eligibility for insurance, and in particular, that it would be considered in connection with

---

**4.** The evidence indicates sources are often contacted by telephone.

**5.** The Income Inspection Report described Hauser's employment as including sales, bookkeeping and management duties, which are all relatively sedentary. A person with such employment duties would be less likely to become totally disabled than one whose duties required heavy physical labor.

Hauser's subsequent claim for disability payments.[6]

Further, there is no evidence in the record of damage resulting from the inaccuracy in the report. At the time Physicians denied Hauser's claim for continued disability payments, it had before it Hauser's description of his employment as an auto mechanic and his physician's certification that his disability was only partial, which opinion was based on Hauser's description of his employment as an auto mechanic. Physicians' claims adjuster did not see the Income Inspection Report until after Hauser's claim had been denied. Soon after its denial of Hauser's claim, Physicians requested a Continuance of Disability Report from Equifax, and that report accurately described Hauser's employment duties. Yet with this information in hand, Physicians still refused to continue disability payments. Under these circumstances, it would be unreasonable to infer that the inaccurate information in the Income Inspection Report regarding Hauser's employment duties proximately caused the denial of Hauser's disability claim.

Hauser contends that aside from any economic loss, he suffered mental and emotional distress as a result of the inaccuracies in the report. The record is devoid of any evidence of such damage.

### B. *Sources of Information*

Hauser contends that in addition to the inaccurate description of his employment duties, the Income Inspection Report contained two inaccuracies relating to the sources of information. The investigator who prepared the report made a notation on the back of the report that his sources were "Turner, 4023" and "int. appl."

The investigator testified that the notation "Turner, 4023" indicated a neighbor of Wayne Hauser, and that prior to trial he determined that the person who resides at house number 4023 is named Turnbo, not Turner. This misspelling of a source's

name is a minor error, and is not evidence which would support a finding of willful or even negligent failure to follow reasonable procedures.

The investigator further testified that the notation "int. appl." meant an interview with the applicant, Wayne Hauser. Hauser denied at trial that he had been interviewed by anyone from Equifax in April 1975, either in person or by telephone, and he contends the investigator's notation on the report was a willful misstatement. Equifax contends that in light of the investigator's contemporaneous notation on the report and the nature of the substantive information in the report, the only reasonable conclusion which can be drawn from the evidence is that Hauser supplied the information.

Whether Equifax did or did not interview Hauser in connection with preparation of the Income Inspection Report, if material, is a question of fact for the jury. If the question had been submitted to the jury, and the jury had determined that Hauser had been interviewed, there could be no finding of willful failure to comply with 15 U.S.C. § 1681e(b).

However, for purposes of the motion for directed verdict, it must be assumed that Hauser was not interviewed. The test to be applied is whether Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the substantive information about Hauser. We note that the Fair Credit Reporting Act does not require that the subject of an investigative consumer report be interviewed; nor does it require disclosure of the sources of information until legal proceedings are commenced. The purpose of the Act is to prevent, or at least curtail, the dissemination of inaccurate information about a consumer. Under the circumstances of this case, where the report contained detailed personal information about the consumer, where the only substantive inaccuracy concerned the na-

---

**6.** It is apparent from the evidence that Physicians and other insurance companies routinely order reports from consumer reporting agencies in connection with claims filed under dis- ability policies. Equifax had a "Continuance of Disability Report" form which was used in making such reports.

ture of his employment duties, and where a good faith dispute exists as to whether the consumer was interviewed in the course of the investigation, a determination by the jury that Hauser had not been interviewed would not support a finding of willful failure to comply with 15 U.S.C. § 1681e(b).

Further, as already noted in this opinion, considering the purpose for which the Income Inspection Report was requested and prepared, the substantive inaccuracy as to Hauser's employment duties may have actually benefited Hauser.

### 2. Disclosure.

Hauser contends Equifax's failure to disclose to him the existence of the September 1975 Continuance of Disability Report was a willful or negligent violation of 15 U.S.C. § 1681g(a), which provides in part:

> Every consumer reporting agency shall, upon request and proper identification of any consumer, clearly and accurately disclose to the consumer:
>
> (1) The nature and substance of all information (except medical information) in its files on the consumer at the time of the request.[7]

The only evidence in the record as to why the existence of the Continuance of Disability Report was not disclosed to Hauser is the testimony by Equifax's claims manager, Conrad Larsen, that the two reports were stored in separate files. There is no evidence from which it could be reasonably inferred that, at the time of Hauser's request for disclosure, Larsen knew the Con-

tinuance of Disability Report had been made.

■ We hold there was insufficient evidence to support a finding of willful noncompliance with the Act's disclosure requirement, but that a permissible inference of negligence may be drawn. However, there is no evidence of damage to Hauser as a result of the incomplete disclosure. The purpose of the Act's disclosure requirement is to provide the consumer with an opportunity to dispute the accuracy of information in his file. The information in the undisclosed Continuance of Disability Report was accurate and had previously been provided to Physicians, the user of the partially inaccurate Income Inspection Report. Therefore, the incomplete disclosure did not damage Hauser in any respect.

### 3. Reinvestigation.

Hauser also contends that since he disputed the accuracy of the description of his employment duties in the Income Inspection Report, Equifax was required by 15 U.S.C. § 1681i(a)[8] to conduct a reinvestigation and correct the inaccuracy, and that its failure to do so constituted a willful or negligent violation of the Act.

■ We find insufficient evidence in the record to require submission of this claim to the jury. In conducting the investigation for the Continuance of Disability Report, Equifax indirectly reinvestigated the inaccurate information in the Income Inspection Report. The corrected information had

---

7. Equifax contends the Continuance of Disability Report is not an "investigative consumer report" within the meaning of the Act. We need not reach this question since 15 U.S.C. § 1681g requires disclosure of all information in the agency's "files." 15 U.S.C. § 1681a(g) describes the term "file" as "all of the information on [a] consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." Thus, whether or not the Continuance of Disability Report is an "investigative consumer report," it is subject to the Act's disclosure requirements.

8. 15 U.S.C. § 1681i(a) provides:
   If the completeness or accuracy of any item of information contained in his file is disputed

by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information. The presence of contradictory information in the consumer's file does not in and of itself constitute reasonable grounds for believing the dispute is frivolous or irrelevant.

been provided to Physicians. While negligence may be inferred from Equifax's lack of cross-referencing its filing system, again there is no evidence of damage to Hauser as a result of the failure to delete the inaccuracy in the Income Inspection Report.

We hold the district court properly granted Equifax's motion for directed verdict. Affirmed.