# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 25-1872

———————————————

Austin Stuart Fraase

*Plaintiff - Appellant*

v.

Advantage Credit Bureau

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of North Dakota - Eastern

——————————

Submitted: March 17, 2026
Filed: June 25, 2026

——————————

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

Austin Stuart Fraase sued Advantage Credit Bureau under the Fair Credit Reporting Act (FCRA) after Advantage mistakenly reported his twin brother Aaron Stuart Fraase's speeding ticket in a background check. *See* 15 U.S.C. § 1681 *et seq.*

The district court[1] granted summary judgment because Advantage followed reasonable procedures and because Austin had no damages. We affirm.

## I.   Background

Austin was a seasonal employee at the Fargo Parks District when he applied for a full-time job as a maintenance technician. Fargo Parks ordered a background check from Advantage. The criminal search section of the background report listed a conviction for "Speeding 24 Mph Over Limit," though the motor vehicle report section showed a clean driving record.

When Fargo Parks received the report, a human resources employee emailed Austin's seasonal supervisor asking him to "[p]lease make sure [Austin was] not speeding in any park district vehicles." The supervisor told Austin the ticket was not "a very good look." When Austin objected that the report was inaccurate, the HR employee said she would "look into [it] over the weekend" and that Austin didn't "have to worry about anything with [his] interview." HR also emailed Austin's supervisor telling him "[i]t's looking like [the background check] may have been r[un] for his brother instead."

Fargo Parks then ordered a second background check from Advantage, which again showed the speeding ticket. The HR employee again reassured Austin that he "had nothing to worry about." During his interview Austin explained that his brother received the ticket. Fargo Parks offered Austin the full-time job, which he accepted and started on schedule.

Advantage mailed adverse action notices to Austin informing him of his right under the FCRA to dispute the accuracy of the reports. Austin instead sued in federal

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

district court, alleging that Advantage failed to follow reasonable procedures to "assure maximum possible accuracy." 15 U.S.C. § 1681e(b).

During discovery, the Advantage employee who prepared the first report explained that she searched the North Dakota Courts' website using Austin's first and last name and date of birth. The search returned Aaron's speeding ticket because the West Fargo Municipal Court grouped the brothers together under one "case jacket." She clicked into the case jacket and saw Austin listed as an "also known as" for Aaron. The employee who performed the second background check testified that she followed Advantage's policy of matching full names and dates of birth when reporting information and that it was "not uncommon for people to go by other names that we're not aware of" or for the criminal and motor vehicle portions of the report to "not [] match up."

Neither party produced a record of what the court website displayed when Advantage ran the search. Advantage produced a report from the court's internal Odyssey docketing system that lists Austin as an alias for Aaron and shows two different driver's license numbers. The parties dispute whether Advantage employees saw this information when running Austin's reports.

## II.    Standard of Review and Legal Framework

We review the district court's grant of summary judgment *de novo* and affirm if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *TCF Nat'l Bank v. Mkt. Intel., Inc.*, 812 F.3d 701, 707 (8th Cir. 2016); Fed. R. Civ. P. 56(a). The FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning [an] individual" whenever they prepare consumer reports. 15 U.S.C. § 1681e(b); *see also Hauser v. Equifax, Inc.*, 602 F.2d 811, 814 (8th Cir. 1979) ("The Act provides for recovery by a consumer upon a showing of willful or negligent failure to follow reasonable procedures."). Advantage reported inaccurate information. The only question is whether it "follow[ed] reasonable

procedures." And while this is often a jury question, "[w]hen the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided, it should be decided by the court as a matter of law." *Hauser*, 602 F.2d at 814 (citation omitted).

## III. Analysis

Advantage accurately entered Austin's first name, last name, and date of birth into the North Dakota Courts' website search. The search returned Aaron's speeding ticket in a "case jacket" that listed Aaron and Austin as the same person. Relying on that information, both Advantage employees included the ticket in Austin's background checks.

Austin first argues that it was unreasonable for Advantage to rely on the court website. But "[t]he FCRA is not a strict liability statute." *Rydholm v. Equifax Info. Serv. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022). A consumer reporting agency is not liable when "information [] received from a source that it reasonably believes is reputable [] turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures." *Id.* (citation omitted). Advantage reasonably believed that the official website for the North Dakota Courts was a reputable source. *Cf. Henson v. CSC Credit Serv.*, 29 F.3d 280, 285 (7th Cir. 1994) (holding that, as a matter of law, "a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice"). Though not the official judgment docket, Advantage's reliance was reasonable because the website served as a public-facing repository of North Dakota court records and Austin has presented no evidence that it "lacked reliability as a source." *Rydholm*, 44 F.4th at 1109. Holding otherwise "would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report" information. *Henson*, 29 F.3d at 285.

Things might be different if there was evidence of "systemic problems" with the website, but there is not. *See Rydholm*, 44 F.4th at 1108. The boilerplate

disclaimer that it *could* contain inaccuracies does not change our view.  Neither does the inconsistency between the report of a speeding ticket and the clean driving record.  Advantage's corporate representative testified that North Dakota state records were not always provided to the data vendor Advantage used for the driving record part of the report.  So, as another Advantage employee similarly testified, it was "not uncommon" for different sections of a report to conflict.

Second, Austin argues that Advantage should have written procedures for twins or similar names.  *See Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001).  We are not sure why that would have mattered here because Austin doesn't claim that Advantage knew he was a twin.  But even if he did, the court's "case jacket" told Advantage that Austin and Aaron were aliases.  Advantage reasonably relied on that.  Along these lines, Austin also says that Advantage did not follow its policy of only reporting information with matching full names and dates of birth.  This is contradicted by the record.  Both employees testified they reported the speeding ticket "because it was a full name, date of birth match."  *See TCF Nat'l Bank*, 812 F.3d at 707.

Finally, Austin argues that the Odyssey report suggests the Advantage employees may have seen two different driver's license numbers, along with the speeding ticket listed under Aaron's name.  He argues these were facial inaccuracies which required Advantage to "look beyond the information furnished."  *See Rydholm*, 44 F.4th at 1108–09.  But again the court website showed the two brothers as the same person and there is no evidence that the Advantage employees saw the Odyssey report or that the driver's license numbers were included on the public-facing version of the website they did see.  And besides, different first names and driver's license numbers are not the type of facial inaccuracies that would require Advantage to dig deeper where the court website grouped all the information in the same "jacket."  *Compare Hauser*, 602 F.2d at 816 ("misspelling of a source's name [was] a minor error" and did not "support a finding of willful or even negligent failure to follow reasonable procedures"), *with Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010) (finding negligence where "there existed a large

-5-

discrepancy in regard to [plaintiff's] last name, middle name, . . . date of birth[, and] . . . citizenship").[2]  Demanding Advantage do more "would [] require credit reporting agencies to engage in background research which would substantially increase the cost of their services" to customers and consumers. *Henson*, 29 F.3d at 285.

Because Advantage followed reasonable procedures, we do not address the district court's conclusion that Austin did not suffer actual damages. *See Rydholm*, 44 F.4th at 1109 ("That [plaintiff's] credit reports may have 'contained inaccurate information is not in itself sufficient for the imposition of liability.'" (quoting *Hauser*, 602 F.2d at 814)).

Affirmed.

_____

_____

[2]Austin speculates that Advantage's claim that it relied on the court website is a post hoc explanation to avoid liability, but he has no "specific facts" to support this. *TCF Nat'l Bank*, 812 F.3d at 707.  Advantage said that "the court system" was the source of the information.  Although some employees weren't "exactly sure" which document included the alias, the one who prepared the first report said that "the North Dakota Court's website . . . contained [the] information."