# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1423

LLOYD SARVER,

*Plaintiff-Appellant*,

v.

EXPERIAN INFORMATION SOLUTIONS,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 7825—**Elaine E. Bucklo**, *Judge.*

———————

ARGUED SEPTEMBER 29, 2004—DECIDED DECEMBER 1, 2004

———————

Before CUDAHY, RIPPLE, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. Lloyd Sarver appeals from an order granting summary judgment to Experian Information Solutions, Inc., a credit reporting company, on his claim under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*

Experian reported inaccurate information on Sarver's credit report, which on August 2, 2002, caused the Monogram Bank of Georgia to deny him credit. Monogram cited the Experian credit report and particularly a reference to a

bankruptcy which appeared on the report. Both before and after Monogram denied him credit, Sarver asked for a copy of his credit report. He received copies both times and both reports showed that accounts with Cross Country Bank were listed as having been "involved in bankruptcy." No other accounts had that notation, although other accounts had significant problems. A Bank One installment account had a balance past due 180 days, and another company, Providian, had written off $3,099 on a revolving account.

On August 29, 2002, Sarver wrote Experian informing it that the bankruptcy notation was inaccurate[1] and asking that it be removed from his report. Sarver provided his full name and address but no other identifying information. On September 11, Experian sent Sarver a letter requesting further information, including his Social Security number, before it could begin an investigation. Sarver did not provide the information, but instead filed the present lawsuit, which resulted in summary judgment for Experian. It was later confirmed that the notation on the Cross Country Bank account was inaccurate and, as it turned out, another Lloyd Sarver was the culprit on that account.

In this appeal from the judgment dismissing his case, Sarver claims summary judgment was improper because issues of fact exist as to whether Experian violated FCRA, §§ 1681i and 1681e(b). We review a grant of summary judgment *de novo. Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

---

[1] Although no one disputes that our Lloyd Sarver never filed for bankruptcy, a "Lloyd Sarver" did so in 1997 in the United States Bankruptcy Court for the Middle District of Pennsylvania.

'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).

Section 1681i requires a credit reporting agency to reinvestigate items on a credit report when a consumer disputes the validity of those items. An agency can terminate a reinvestigation if it determines the complaint is frivolous, "including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." § 1681i(a)(3). We do not need to decide whether Sarver's failure to provide the information Experian requested rendered his complaint frivolous; his claim under § 1681i(a) fails for another reason, a lack of evidence of damages. In order to prevail on his claims, Sarver must show that he suffered damages as a result of the inaccurate information. As we have said in *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001):

> Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of "actual damages."

On this point, the district court concluded that there were no damages. Our review of the record leads us to agree.

Sarver, however, disagrees and claims that he suffered damages when he was denied credit from Monogram Bank of Georgia on August 2, 2002. This letter cannot be a basis for his damage claim, however, because as of August 2, Experian had no notice of any inaccuracies in the report. Even though Sarver asked for a copy of his report on July 18, he did not notify Experian of a problem until a month and a half later. Experian must be notified of an error before it is required to reinvestigate. As we have made clear, the FCRA is not a strict liability statute. *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994).

Sarver also does not show that he suffered pecuniary damages between August 29 (when he notified Experian of

the error) and February 20, 2003 (when the Cross Country account was removed from his file). He does not claim that he applied for credit during that time period or that a third party looked at his report. In addition, his claim for emotional distress fails. We have maintained a strict standard for a finding of emotional damage "because they are so easy to manufacture." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001). We have required that when "the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003). Finally, to obtain statutory damages under FCRA § 1681n(a), Sarver must show that Experian willfully violated the Act. There is similarly no evidence of willfulness. Summary judgment was properly granted on this claim.

We turn to Sarver's claim under § 1683(b), which requires that a credit reporting agency follow "reasonable procedures to assure maximum possible accuracy" when it prepares a credit report. The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question. *Crabell*, 259 F.3d at 663. However, to state a claim under the statute,

> a consumer must sufficiently allege "that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). However, the credit reporting agency is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA "does not make reporting agencies strictly liable for all inaccuracies." *Id.* A credit reporting agency is not liable under the FCRA if it followed "reasonable procedures to assure maximum possible accuracy," but nonetheless reported inaccurate information in the consumer's credit report.

*Henson*, 29 F.3d at 284. The Commentary of the Federal Trade Commission to the FCRA, 16 C.F.R. pt. 600, app., section 607 at 3.A, states that the section does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.

Experian has provided an account of its procedures. The affidavit of David Browne, Experian's compliance manager, explains that the company gathers credit information originated by approximately 40,000 sources. The information is stored in a complex system of national databases, containing approximately 200 million names and addresses and some 2.6 billion trade lines, which include information about consumer accounts, judgments, etc. The company processes over 50 million updates to trade information each day. Lenders report millions of accounts to Experian daily; they provide identifying information, including address, social security number, and date of birth. The identifying information is used to link the credit items to the appropriate consumer. Mr. Browne also notes that Experian's computer system does not store complete credit reports, but rather stores the individual items of credit information linked to identifying information. The credit report is generated at the time an inquiry for it is received.

One can easily see how, even with safeguards in place, mistakes can happen. But given the complexity of the system and the volume of information involved, a mistake does not render the procedures unreasonable. In his attempt to show that Experian's procedures are unreasonable, Sarver argues that someone should have noticed that only the Cross Country accounts were shown to have been involved in bankruptcy. That anomaly should have alerted Experian, Sarver says, to the fact that the report was inaccurate. What Sarver is asking, then, is that each computer-generated report be examined for anomalous information and,

if it is found, an investigation be launched. In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily.

We found in *Hensen* that a consumer reporting agency was not liable, as a matter of law, for reporting information from a judgment docket unless there was prior notice from the consumer that the information might be inaccurate. We said that a

> contrary rule of law would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action. Such a rule would also require credit reporting agencies to engage in background research which would substantially increase the cost of their services. In turn, they would be forced to pass on the increased costs to their customers and ultimately to the individual consumer.

*Hensen*, 29 F.3d at 285. The same could be said for records from financial institutions. As we said, in his affidavit Mr. Browne proclaims, and there is nothing in the record to make us doubt his statement, that lenders report many millions of accounts to Experian daily. Sarver's report, dated August 26, 2002, contains entries from six different lenders. The increased cost to Experian to examine each of these entries individually would be enormous. We find that as a matter of law there is nothing in this record to show that Experian's procedures are unreasonable.

Accordingly, we AFFIRM the judgment of the district court.

No. 04-1423                                                     7

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*