Dennis F. O'BRIEN, Jr., and Sandra L. O'Brien, H/W, Plaintiffs,

v.

EQUIFAX INFORMATION SER-VICES, LLC, and HSBC Bank USA, Defendants.

No. Civ.A.03–CV–6583.

United States District Court, E.D. Pennsylvania.

Aug. 11, 2005.

James A. Francis, John Soumilas, Mark D. Mailman, Francis & Mailman,P.C., Philadelphia, PA, for Plaintiffs.

Catherine Olanich Raymond, Christie Pabarue Mortensen & Young PC, Philadelphia, PA, Lewis P. Perling, Kilpatrick Stockton LLP, Atlanta, GA, for Defendants.

### *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

Plaintiffs Dennis F. O'Brien, Jr., and Sandra L. O'Brien ("the O'Briens") bring this action under the Fair Credit Report-

ing Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, against defendant Equifax Information Services, LLC ("Equifax").[1] The court has subject matter jurisdiction based on the existence of a federal question pursuant to 28 U.S.C. § 1331. The sole claim remaining in this case is the O'Briens' claim that Equifax negligently failed to comply with 15 U.S.C. § 1681e(b).[2] Presently before me is Equifax's motion for summary judgment on this claim. For the reasons set forth below, the motion is denied.

## BACKGROUND

### The O'Briens' Mortgage Application

On May 29, 2003, the O'Briens applied to refinance their mortgage with Carteret Mortgage Corporation ("Carteret"). (Pl.'s Resp. Ex. B.) As part of their mortgage application, Carteret and its bank requested the O'Briens' credit history. On June 26, 2003, Carteret sent an email to the O'Briens stating that the lending bank "sent back a condition on your loan today asking for discharge papers on a previous bankruptcy." (Pl.'s Resp. Ex. G.) The O'Briens replied to Carteret's email stating that there must be a mistake on the lending bank's part. (Pl.'s Resp. Ex. H.) The O'Briens' obtained a copy of the credit report that Carteret's bank used. (Pl.'s Resp. Ex. F.) That report, prepared by Fidelity National Credit Services, consisted of a merging of credit reports issued by Experian, Trans Union, and Equifax. (*Id.*)

This merged report indicated that on June 19, 2003, Equifax issued a credit report incorrectly indicating that the O'Briens had an HSBC account that was "included in bankruptcy."[3] (Pl.'s Resp. Ex. F; Def.'s Mot. at 6.) The O'Briens never had an HSBC account that was included in bankruptcy. (Pl.'s Resp. Ex. J (letter from HSBC).)

The O'Briens contacted Fidelity National Credit Services in an effort to correct the credit report. (Pl.'s Resp. Ex. N (faxes dated July 15 & 23, 2003).) The O'Briens also contacted HSBC, which told them that it never reported any bankruptcy and that their accounts were in good standing. (Dennis O'Brien Dep. at 139, 143; Pl.'s Resp. Ex. J (letter from HSBC dated July 23, 2003).) The O'Briens also contacted Equifax in an effort to correct their credit report. (Dennis O'Brien Dep. at 152–55.) The O'Briens and Carteret exchanged at least two more rounds of correspondence concerning the O'Briens' loan application and their alleged bankruptcy. (Pl.'s Resp. Ex. I & R.)

After July 24, 2003, Carteret no longer responded to the O'Briens' inquiries and the O'Briens did not receive a mortgage through Carteret. (Dennis O'Brien Dep. at 180.) At the time the O'Briens applied for a mortgage with Carteret, Carteret was offering a 4.375% fixed interest rate on 15–year mortgages. (Pl.'s Resp. Ex. B.) The O'Briens eventually received a

---

1. Defendant HSBC Bank USA ("HSBC") was dismissed from this case by stipulation on June 18, 2004. The O'Briens' FCRA claim for punitive damages and their common law claims for negligence, defamation and invasion of privacy were withdrawn by stipulation on February 16, 2005.

2. Title 15 U.S.C. § 1681o provides a private right of action for negligent noncompliance with any duty imposed by the FCRA and allows recovery for actual damages and attorneys fees and costs. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir.1996).

3. The credit reports attached to the O'Briens' response include the letters "BK LIQ REO" listed next to an HSBC account. (Pl.'s Resp. Ex. F at 3; Ex. L at 2.) Both parties interpret these letters to indicate that the HSBC account was marked as "included in bankruptcy" without fully explaining what that means. I adopt the parties' phrase and interpret it to mean that the account was part of a bankruptcy estate.

mortgage at a higher rate from a different company. (Pl.'s Resp. Ex. T.)

*Equifax's Procedures and the O'Briens' Consumer Credit Report*

Equifax is a consumer reporting agency that receives credit information on individual consumers from various sources, including banks, creditors, and merchants. (Fluellen Aff. ¶¶ 3–5.)[4] Equifax only accepts information from sources that it deems to be reliable.[5] (*Id.* ¶¶ 5–7.) Equifax matches the information it receives from its sources to each consumer's credit file. (*Id.* ¶ 8.) Equifax itself does not originate or create credit information. (*Id.* ¶ 9.)

As stated above, on June 19, 2003, Equifax issued a credit report indicating that the O'Briens had an HSBC account that was "included in bankruptcy." (Pl.'s Resp. Ex. F; Def.'s Mot. at 6.) That particular HSBC account was the only account on the O'Briens' credit report that was listed as being included in bankruptcy. (Pl.'s Resp. Ex. F.) The O'Briens' credit report also indicated that there were no public records of the O'Briens ever filing for bankruptcy. (*Id.*)

Dennis O'Brien contacted Equifax sometime between July 15, 2003 and July 23, 2003 regarding the HSBC account that was reported to be included in bankruptcy. (Dennis O'Brien Dep. at 152–55.) Equifax removed the reported bankruptcy from Dennis O'Brien's credit file on August 1, 2003. (Fluellen Aff. ¶ 15.) Sandra O'Brien contacted Equifax on July 24, 2003, regarding the HSBC account that was reported as being included in bank-

ruptcy. (Pl.'s Resp. Ex. O.) Equifax corrected Sandra O'Brien's credit file on July 24, 2003. (Fluellen Aff. ¶ 17.)

In March 2004, Equifax implemented an automated procedure that cross-references reports that a consumer has an account that is included in bankruptcy with the public records section of the consumer's credit file. (Hudziak Dep. at 21–23.)[6] In generating a consumer credit report, if the consumer supposedly had an account that was included in bankruptcy but there was no public record of the consumer ever filing for bankruptcy, then the consumer's credit report would output a "blank" status for that account. *Id.* In these circumstances, the credit report would not indicate that the account was included in bankruptcy. *Id.* Had this procedure been in place in June 2003, the O'Briens' credit report would not have indicated that they had an HSBC account included in bankruptcy. (*Id.* at 22.)

**STANDARD OF REVIEW**

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a "genuine" issue if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must make an initial showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

---

**4.** Alicia Fluellen is the Director of Customer Care for Equifax. (Fluellen Aff. ¶ 1.)

**5.** There seems to be a factual dispute over whether HSBC is one of Equifax's sources of information. Equifax provides an affidavit stating that HSBC is such a source. (Fluellen Aff. ¶ 5.) The O'Briens provide a letter from

HSBC that states, "For your information we report to Experian, Innovis and Trans Union." (Pl.'s Resp. Ex. J.) The letter from HSBC does not state that it reports to Equifax.

**6.** Lynn Hudziak is an information services consultant with Equifax. (Hudziak Dep. at 4.)

S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In determining whether the non-moving party has established each element of its case, the court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

■ Title 15 U.S.C. § 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." A case of negligent noncompliance with § 1681e(b) consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996).

■ Equifax argues that the O'Briens, as a matter of law, fail to establish the second element of a § 1681e(b) claim, that the inaccuracy in their credit report was due to Equifax's failure to follow reasonable procedures to ensure maximum possible accuracy.[7] Reasonable procedures are those that "a reasonably prudent person would undertake under the circumstances." *Philbin,* 101 F.3d at 963 (internal quotations and citations omitted). "Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Id.* Typically, the question of whether a credit reporting agency followed reasonable procedures is reserved for a jury. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir.2001); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991).

In *Philbin,* the Third Circuit discussed three possible standards for plaintiff's burden of proof on the second element of a § 1681e(b) claim (hereinafter referred to as the "reasonable procedures element"). 101 F.3d at 963–66. The Third Circuit specifically declined to endorse any one of the three possible standards. *Id.* at 965. Under the most stringent possible standard, the burden of proving the second element remains with the plaintiff throughout the entire case, and the "plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Philbin,* 101 F.3d at 964 (citing *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47 (D.C.Cir.1984)). In order to survive summary judgment, the plaintiff must present "some unspecified quantum of evidence beyond mere inaccuracy." *Id.* at 965.[8]

---

7. Equifax does not dispute that there was an inaccuracy in the O'Briens' consumer credit reports, the first element of a § 1681e(b) claim. Nor does Equifax contest that the O'Briens put forth sufficient evidence of injury and causation to go to a jury on the third and fourth elements of a § 1681e(b) claim.

8. Even under the most stringent standard for the reasonable procedures element, there are "certain instances" when the "inaccurate credit reports by themselves can be read as evidencing unreasonable procedures." *Philbin,* 101 F.3d at 964. *Philbin* only provided one example of these "certain instances:" if a credit reporting agency issued two inconsis-

Under the least stringent possible standard for plaintiff's burden of proof on the reasonable procedures element, once a plaintiff demonstrates inaccuracies in a credit report, the burden shifts to the defendant to prove as an affirmative defense the presence of reasonable procedures. *Philbin*, 101 F.3d at 965. Thus, "prior to sending a § 1681e(b) claim to the jury, a credit reporting agency can usually only prevail if a court finds, as a matter of law, that the credit report was 'accurate.'" or the defendant is able to "produce evidence that demonstrates as a matter of law that the procedures it followed were reasonable." *Id.* (citing *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir.1995); *Cahlin*, 936 F.2d 1151).

Under the "middle" possible standard, the burden of proving that the credit reporting agency failed to follow reasonable procedures remains with the plaintiff, even after the plaintiff demonstrates inaccuracies in a credit report. As with the least stringent standard, the "plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report." *Philbin*, 101 F.3d at 965. Also, under this middle standard, "once a plaintiff has demonstrated inaccuracies in the report, a defendant could prevail on summary judgment only if it were to produce evidence that demonstrates as a matter of law that the procedures it followed were reasonable." *Philbin*, 101 F.3d at 965.

Under two of the three possible standards discussed in *Philbin*, the O'Briens satisfy their burden at the summary judgment stage simply because they have produced unrebutted evidence of an inaccuracy in their credit report. (Pl.'s Resp. Ex. J (letter from HSBC stating that the

O'Briens never had an HSBC account in bankruptcy).)

■ The O'Briens also survive summary judgment under the most stringent standard because, by presenting evidence of additional or alternative procedures that Equifax could have taken, the O'Briens "minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Philbin*, 101 F.3d at 964. The O'Briens present evidence of an automated procedure that cross-references reports that a consumer has an account that is included in bankruptcy with the public records section of the consumer's credit file. (Hudziak Dep. at 21–23.) In generating a consumer credit report under this automated procedure, if the consumer supposedly has an account that is included in bankruptcy but there is no public record of the consumer ever filing bankruptcy, then the consumer's credit report would not indicate that the account was included in bankruptcy. *Id.* Had this procedure been in place in June 2003, there would not have been an inaccuracy in the O'Briens' credit report. (*Id.* at 22.) A trier of fact could find that a reasonably prudent person would undertake such automated cross-referencing whenever there is an account reported as being included in bankruptcy. A trier of fact could also find that the potential harm from an inaccurate report that an account is included in bankruptcy outweighs the burden of automatically cross-referencing such reports with the public records section of a consumer's credit file. Thus, the O'Briens present evidence as to the second element of their § 1681e(b) claim, that Equifax's failure to undertake

---

tent credit reports on the same consumer, those credit reports by themselves can provide sufficient grounds for inferring that an agency acted negligently in failing to verify

information. *Id.* In the instant case, Equifax did not generate two inconsistent credit reports on the O'Briens.

such cross-referencing in June 2003 was a failure to follow reasonable procedures to assure maximum possible accuracy and that this failure caused the inaccuracy in the O'Briens' credit report.[9]

Equifax argues that the procedures it followed were reasonable as a matter of law. (Def.'s Reply at 9–13.) Equifax states, "it is reasonable for Equifax to rely upon the accuracy of information from credit grantors and absent prior notice that a furnishing source is unreliable, it should not be required to engage in an investigation just because the account was reported as included in bankruptcy." (Def.'s Reply at 13.) Equifax argues that HSBC is one such reliable source and that it was reasonable for Equifax to report information that it received from HSBC. Prior to the O'Briens' contacting Equifax, Equifax had no notice that the information it received from HSBC regarding the O'Briens' account was unreliable. Right after the O'Briens' contacted Equifax, Equifax removed the information from their credit report. According to Equifax, without prior notice that the information from HSBC was unreliable, Equifax's inclusion of the information from HSBC in the O'Briens' credit report constituted reasonable procedures.

In making this argument, Equifax relies on *Sarver v. Experian Information Solutions*, 390 F.3d 969 (7th Cir.2004). In *Sarver*, the defendant, Experian, inaccurately reported that plaintiff, Sarver, had an account that was included in bankruptcy. 390 F.3d at 970. Experian presented evidence that it reported credit information that originated from over 40,000 sources. Sarver argued that Experian, in generating his credit report, should have noticed that no other accounts on Sarver's credit report were shown to be involved in a bankruptcy. *Id.* at 972. The Seventh Circuit found that, in attempting to show that Experian failed to follow reasonable procedures, Sarver was essentially asking that "each computer-generated report be examined for anomalous information and, if it is found, an investigation be launched." *Id.* The court held that "[i]n the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily." *Id.*[10]

9. The O'Briens preemptively argue in their response to Equifax's motion that evidence of this automated procedure is not excluded by Federal Rule of Evidence 407 governing the admissibility of subsequent remedial measures. (Pl.'s Resp. at 17 n. 6.) Equifax does not make such an objection in its briefs. Therefore, there is no need to address the admissibility of this evidence.

10. In coming to its conclusion, the *Sarver* court noted that:

The Commentary of the Federal Trade Commission ["FTC"] to the FCRA, 16 C.F.R. pt. 600, app., section 607 at 3.a, states that the section does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.

390 F.3d at 972. The FTC's commentary to the FCRA does not control in the instant case. Indeed, the FTC's commentary specifically provides that "[t]he interpretations in the Commentary are not trade regulation rules or regulations, and ... they do not have the force or effect of statutory provisions." 16 C.F.R. § 600.2. Additionally, in the same subsection noted by the *Sarver* court, the FTC discusses the reliability of sources and states, "Requirements are more stringent where the information furnished appears implausible or inconsistent...." 16 C.F.R. pt 600, app., section 607 at 3.d. In the instant case, the information allegedly provided by HSBC appeared "implausible or inconsistent." The O'Briens did not have any other accounts that were reported as being included in bankruptcy and there were no public records of the O'Briens ever filing for bankruptcy. Therefore, the FTC commentary indicates that the requirements placed on Equifax should be more

Equifax's reliance on *Sarver* is misplaced because the facts in *Sarver* are distinguishable from the instant case. First, there is a factual dispute in the instant case as to whether HSBC is actually one of Equifax's sources of information. (Pl.'s Resp. Ex. 7.) Equifax provides an affidavit stating that HSBC is one of Equifax's reliable sources of information. (Fluellen Aff. ¶ 5.) The O'Briens provide a letter from HSBC that states, "For your information we report to Experian, Innovis and Trans Union." (Pl.'s Resp. Ex. J.) The letter from HSBC does not state that it reports to Equifax. Given that this fact is in dispute, Equifax's argument that summary judgment should be granted because Equifax only reports information from reliable sources of information, one of which is HSBC, must fail.[11] Additionally, the plaintiff in *Sarver* failed to provide any evidence, beyond his argument that someone should have checked his credit report for anomalies, that defendant's procedures were unreasonable. In the instant case, the O'Briens present evidence of an automated procedure that Equifax could have implemented to prevent the exact type of inaccuracy that was included in their credit report. Thus, Equifax's reliance on the Seventh Circuit's decision in *Sarver* is misplaced because the facts in the instant case are distinguishable from the facts in *Sarver*, and Equifax fails to show that its procedures were reasonable as a matter of law.

Equifax's reliance on *Sarver* is also misplaced because the Seventh Circuit's holding in *Sarver* is simply not controlling law in the Third Circuit. As stated above, the O'Briens meet the most stringent standard for withstanding summary judgment on the reasonable procedures element set forth by the Third Circuit in *Philbin*. The Third Circuit has not provided guidance as to what procedures are reasonable as a matter of law. There is no reason to believe that the Third Circuit would adopt the Seventh Circuit's holding in *Sarver*, as interpreted by Equifax, that a credit reporting agency's procedures are reasonable as a matter of law whenever the credit reporting agency simply repeats information received from a reputable source. Under such a holding, there is no incentive for credit reporting agencies such as Equifax or Experian to ever change or improve their current procedures. Under the holding that Equifax urges, as long as Equifax is simply repeating information from reputable sources, it has fulfilled its duty § 1681e(b) duty, even if there is easily available a procedure that would greatly improve accuracy at a minimal cost. On the other hand, under current Third Circuit law, there exists an incentive for credit reporting agencies to re-evaluate periodically the reasonableness of their procedures and weigh the "potential harm from inaccuracy against the burden of safeguarding against such inaccuracy," *Philbin*, 101 F.3d at 963, because the reasonableness of procedures and the burden of safeguards can change given newly available practices and procedures in the industry. There is no reason to believe that the Third Circuit would abandon its current holding in favor of a static rule that fails to account for possible changes in the standard of reasonableness.

stringent than simply repeating information received from a supposedly reputable source.

**11.** Equifax also argues that, because Equifax followed reasonable procedures by reporting information from reasonably reliable sources, the O'Briens' " § 1681e(b) claim fails due to lack of evidence of notice to Equifax before the alleged damages were incurred." (Def.'s Reply at 13.) Equifax's argument fails because the factual predicate to its argument, that HSBC was one of Equifax's reasonably reliable sources, is disputed.

## CONCLUSION

The O'Briens present evidence from which a trier of fact can infer that the inaccuracy in their credit report was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy. Therefore, defendant Equifax's summary judgment motion is denied.[12]

### *ORDER*

AND NOW, this ___ 11th_ day of August 2005, it is **ORDERED** that defendant Equifax's Motion for Summary Judgment (doc. # 36) is **DENIED**. It is **FURTHER ORDERED** that defendant Equifax's Motion in Limine (doc. # 41) is **DENIED WITHOUT PREJUDICE** to re-file with more specificity prior to the final pre-trial conference.

Trial shall begin on **Monday, December 5, 2005 at 10:00 am.** The final pre-trial conference will take place on **Thursday, December 1, 2005 at 4:00 pm.**

---

**12.** Equifax also argues that economic damages should be excluded from the O'Briens' claim because their only claim for economic damages are based on hearsay. (Def.'s Reply at 13–14.) Because Equifax raises the same argument in its Motion in Limine, I will not address this argument until I address the motion in limine at the final pre-trial conference.