**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1800
_____

PHILIP C. PULLEY; DEVRA K. PULLEY, H/W,
Appellants

v.

STERLING BANCORP; STERLING NATIONAL BANK; TRANSUNION LLC;
EQUIFAX INFORMATION SERVICES LLC, DBA Equifax Credit Information
Service, DBA Equifax Inc; EXPERIAN INFORMATION SOLUTIONS INC., DBA
Experian Information Solutions Inc.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:20-cv-06109)
District Judge: Honorable John M. Younge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 21, 2024

Before: RESTREPO, FREEMAN, and MCKEE, *Circuit Judges*

(Opinion filed: October 1, 2024)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FREEMAN, *Circuit Judge*.

Philip and Devra Pulley sued Sterling Bancorp and Sterling National Bank (collectively, "Sterling") as well as three credit reporting agencies ("CRAs") — TransUnion, Experian, and Equifax. They brought claims under the Fair Credit Reporting Act ("FCRA") after Sterling erroneously reported them delinquent on their mortgage. The District Court granted summary judgment for all defendants on all claims. We will reverse the part of the District Court's order granting summary judgment for TransUnion and Experian on Mr. Pulley's negligent noncompliance claim and affirm the order in all other respects.

I[1]

Over twenty years ago, the Pulleys and Sterling executed a $600,000 note and mortgage on a property in Pennsylvania. After the onset of the COVID-19 pandemic, the Pulleys entered into a forbearance agreement that temporarily excused them from making their monthly payments for the months of May, June, and July 2020. Notwithstanding the forbearance agreement, in August 2020, Sterling—acting through its subservicer, Dovenmuehle Mortgage, Inc. ("DMI")—reported to the CRAs that the Pulleys missed their mortgage payments for those three months and had a past-due balance of $16,968.

Mr. Pulley asserts that he wrote to all three CRAs on August 7, 2020 to dispute this inaccuracy in his credit report. TransUnion does not acknowledge receipt of his

---

[1] We recount the facts in the light most favorable to the Pulleys and draw all reasonable inferences in their favor. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).

letter, although it acknowledges receipt of an August 11, 2020 telephonic dispute. There is no evidence in the record that Ms. Pulley ever filed a dispute about her credit report with any of the CRAs.

Upon learning of Mr. Pulley's dispute from TransUnion, Sterling opened an investigation and modified its reporting on Mr. Pulley's account to show no outstanding balance. By September 3, 2020, TransUnion had updated Mr. Pulley's credit report to remove the delinquency notation and outstanding balance. Although Experian insists that it never received a dispute, it asserts that it rectified any alleged inaccuracy in Mr. Pulley's credit report after receiving a copy of Sterling's response to TransUnion. Equifax maintains that it never reported any inaccurate information or received a dispute from Mr. Pulley and therefore had no obligation to correct his credit report.

In their FCRA suit, the Pulleys each claim that Sterling failed to conduct a reasonable investigation and modification of their mortgage details upon learning of the dispute from TransUnion as required by 15 U.S.C. § 1681s–2(b) (the "reasonable investigation claim"). They also claim that the CRAs' procedures for creating accurate reports and investigating disputes violated 15 U.S.C. §§ 1681e(b) (the "negligent noncompliance claim") and 1681i (the "reasonable reinvestigation claim").

All defendants moved for summary judgment, and the Pulleys cross-moved for partial summary judgment against Sterling. The District Court granted the defendants' motions and denied the Pulleys'. The Pulleys timely appealed.

3

II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the grant or denial of a motion for summary judgment. *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine factual dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Canada v. Samuel Grossi & Sons*, 49 F.4th 340, 345 (3d Cir. 2022).

III[2]

**Reasonable investigation claim.** Sterling is a "furnisher" of information to CRAs within the meaning of the FCRA. *See Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014). When a consumer notifies a furnisher of an inaccuracy in the information provided to a CRA, the FCRA requires the furnisher to make a "reasonable"

---

[2] The record contains no evidence that Ms. Pulley disputed an inaccuracy in her credit report—a prerequisite for bringing a claim under the FCRA. *See Cortez v. TransUnion, LLC*, 617 F.3d 688, 714 (3d Cir. 2010) (explaining that a § 1681i(c) claim requires a showing that the plaintiff disputed an item in her file). Further, none of Ms. Pulley's credit reports are in the record, so there is no evidence from which a reasonable jury could conclude that Sterling furnished or a CRA published inaccurate information regarding her credit history. Therefore, we will affirm the District Court's order granting summary judgment for all defendants on Ms. Pulley's claims.

investigation—that is, one "that a reasonably prudent person would undertake under the circumstances." *Id.* at 864 (quoting *Cortez*, 617 F.3d at 709); 15 U.S.C. § 1681s-2(a)(8). A furnisher that receives notice indirectly from a CRA, after a consumer has provided the CRA with notice of the dispute, must also investigate the dispute and take appropriate action. *Id.* § 1681s-2(b)(1). Reasonableness is normally a question for trial. *Seamans*, 744 F.3d at 864-65.

Regardless of the outcome of the investigation, the furnisher must report the results to the CRA that notified it of the consumer's dispute. 15 U.S.C. § 1681s-2(b)(1)(C). The furnisher also must report any incomplete or inaccurate information found during the investigation to all CRAs who received that information. *Id.* § 1681s-2(b)(1)(D).

Mr. Pulley has not raised a genuine issue of fact as to whether Sterling (through DMI) followed reasonable procedures to investigate and correct the inaccurate reporting under § 1681s-2(b)(1). The record shows that TransUnion received Mr. Pulley's dispute and notified DMI via an Automated Credit Dispute Verification ("ACDV"). DMI then reviewed the dispute, and updated the ACDV on August 14, 2020 to reflect that the loan was current with $0 past due. These facts are established by numerous record sources, including: (1) the investigation results that TransUnion sent to Mr. Pulley on September 3, 2020, which contain a modified account rating chart indicating that the account with Sterling was current; (2) Mr. Pulley's Experian credit report dated February 2021 that shows the same; (3) Mr. Pulley's credit score from TransUnion showing a significant increase on August 16, 2020 alongside the notation, "A delinquency/past due account

5

was removed from your credit report"; and (4) similar increases in Mr. Pulley's credit score from Equifax on August 17, 2020 and from Experian on August 20, 2020.[3]

Mr. Pulley argues that Sterling is nonetheless liable because it continued to furnish misleading information about his mortgage, even after correcting the overt inaccuracies. He argues that Sterling needed to remove the delinquency notation *and* explain why he made no payments between May 2020 and July 2020 to avoid creating the impression that he had defaulted on the mortgage. But the modified TransUnion and Experian reports state that the Sterling loan was "current," "never late," and "affected by natural or declared disaster." And "just because a report could potentially be a bit clearer does not mean that it is not very clear at present." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 344 (3d Cir. 2022). The modified reports are accurate and clearly state that Mr. Pulley did not default on his mortgage during May, June, and July 2020. So Mr. Pulley's reasonable investigation claim against Sterling fails.

---

[3] The evidence Mr. Pulley cites is insufficient to defeat summary judgment. *See Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) ("[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor."). He points to (1) his own correspondence with Sterling, including a December 29, 2020 letter in which Sterling suggested that it had belatedly corrected the currentness of the May 2020 payment, and (2) an internal DMI record dated January 26, 2021 stating, "DPT still processing cred correction," App. 987. These documents must be viewed in context of the complete record, which includes TransUnion's modified account rating chart dated September 3, 2020, which shows the correction was made and Mr. Pulley's loan was current during the entire forbearance period. No reasonable jury could doubt that Sterling fully corrected the inaccuracies with the CRAs months before Mr. Pulley's proffered documents were created. Mr. Pulley also points to an October 2020 email exchange with a WFSF Bank employee stating that WFSF ran two credit checks showing the disputed inaccuracy. But the complete record reveals that WSFS ran these checks in July 2020 and on August 10, 2020—*before* Sterling addressed Mr. Pulley's dispute.

6

IV

FCRA also imposes certain obligations on CRAs, both before and after they receive notice of an inaccuracy. As relevant here, CRAs must strive to "assure maximum possible accuracy" in credit reports. 15 U.S.C. § 1681e(b). And after a CRA receives a notice disputing the completeness or accuracy of information provided by the agency, "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Id.* § 1681i(a)(1)(A).

A

**Negligent noncompliance claim.** A negligent noncompliance claim under FCRA § 1681e(b) has four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Bibbs*, 43 F.4th at 342 (quoting *Cortez*, 617 F.3d at 708). "[T]he reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" *Cortez*, 617 F.3d at 709 (quoting *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004)). We have held that a reasonable jury could infer that a CRA's procedures were unreasonable when it issued "two reports that were inconsistent with each other" with respect to the alleged inaccurate information. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 966 (3d Cir. 1996) (citation omitted).

7

Here, TransUnion and Experian reported that Mr. Pulley's account with Sterling was current in June and July 2020. Then, in August 2020, they reported the inaccurate information furnished by Sterling: that the account was 90 days delinquent. App. 1027, 1115. A reasonable jury could find that reporting a 90-day delinquency was inconsistent with the absence of a 30- or 60-day delinquency. Upon making that finding, a reasonable jury could also find that the agencies acted negligently by failing to verify that inconsistent information. *See Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 52 (D.C. Cir. 1984) ("Certainly, inconsistencies within a single file or report . . . can provide sufficient ground for inferring that an agency acted negligently in failing to verify information."). That suffices to defeat summary judgment. Therefore, we will reverse the order granting summary judgment for TransUnion and Experian on Mr. Pulley's negligent noncompliance claim.

We will affirm the order granting summary judgment for Equifax. Although the record contains Mr. Pulley's credit score from Equifax, it does not contain his Equifax credit report. Therefore, there is no evidence of inconsistencies in the report or other signs that Equifax failed to use reasonable procedures to correct any inaccuracies. *See Cortez*, 617 F.3d at 709; *cf. Philbin*, 101 F.3d at 966.

B

**Reasonable reinvestigation claim.** After a consumer notifies a CRA of a dispute, that CRA "shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" and rectify any inaccuracy within 30 days. 15 U.S.C. § 1681i(a)(1)(A). The record shows that all three CRAs satisfied these requirements.

8

TransUnion took immediate steps when it received Mr. Pulley's dispute. It notified Sterling, obtained corrected information from DMI, and then updated Mr. Pulley's credit report to eliminate the inaccuracies by September 3, 2020. Similarly, regardless of how Experian learned of the inaccuracies concerning Mr. Pulley's account with Sterling, it corrected the inaccuracies within 30 days of when Mr. Pulley asserts that he lodged a dispute.[4] And even if the drop in Mr. Pulley's Equifax credit score supports that Equifax reported inaccurate information, his score recovered less than two weeks after Mr. Pulley says he filed a dispute, demonstrating that Equifax also took whatever steps were necessary to rectify any inaccuracies. No reasonable jury could find that any of the agencies' successful reinvestigations was inadequate.

*       *       *

For the reasons discussed above, we will reverse the District Court's grant of summary judgment for TransUnion and Experian on Mr. Pulley's negligent noncompliance claim, affirm the remainder of the District Court's order, and remand for further proceedings.

---

[4] Although the corrected Experian report contained in the appellate record is dated February 2021, it shows that Mr. Pulley's credit score on Experian had recovered by August 20, 2020.