

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2006

# Rashid v. First Energy Corpp

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3054

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rashid v. First Energy Corpp" (2006). *2006 Decisions*. Paper 933.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/933

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 05-3054
_____

SYLVIA M. RASHID
Appellant
v.

FIRST ENERGY CORPORATION PENSION PLAN; RETIREMENT BOARD OF
FIRST ENERGY CORPORATION PENSION PLAN; TRUSTEES OF FIRST
ENERGY CORPORATION PENSION PLAN; FIRST ENERGY CORPORATION
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil No. 01-cv-00001
(Honorable David S. Cercone)
_____

Submitted Under Third Circuit LAR 34.1(a)
on April 25, 2006

Before: SCIRICA, *Chief Judge*, NYGAARD, *Circuit Judge*,
and YOHN, *District Judge**

(Filed: June 8, 2006)

_____

OPINION OF THE COURT
_____

_____

    *  The Honorable William H. Yohn Jr., United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

YOHN, *District Judge*.

The appellant, Sylvia Rashid, a former employee of the Pennsylvania Power Company ("Penn Power"),[1] brought this action under the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. §§ 1001-1461, asserting that the defendants violated their fiduciary duties by representing in May or June 1999 that no early-retirement incentive program would be offered in the near future and then offering such a program in January 2000, after she had retired. The District Court determined that the defendants were not "seriously considering" the incentive program at any time before Rashid retired and entered summary judgment for the defendants. Because we conclude that the District Court was correct in ruling that no reasonable jury could find that the incentive program was under serious consideration in May or June 1999, we will affirm.

**I.**

Rashid was a participant in the FirstEnergy Pension Plan (the "Plan"). On May 10, 1999, Rashid turned fifty-five and became eligible for early retirement under the Plan. In both May and June 1999, she asked her supervisor, Dan Vogler, whether the company had plans to offer an early-retirement incentive program.[2] Rashid stated that she would postpone her retirement if such a program was on the horizon. At Rashid's request,

---

[1] Penn Power is a wholly-owned subsidiary of FirstEnergy.

[2] The company had offered such a program in 1998.

Vogler relayed her question to Joseph Hrach, the President of Penn Power, who stated that Penn Power would not offer an incentive program in the near future. Vogler apprised Rashid of Hrach's response,[3] and Rashid elected to retire on July 1, 1999.

In 1999, Hrach directed three Penn Power employees to draft a business plan outlining ways in which Penn Power could reduce its costs in 2000 (the "Business Plan"). The employees worked through the summer and early fall of 1999, sometimes conferring with Hrach, and on October 19, 1999, they presented the completed Business Plan to Earl Carey, who was in charge of regional operations for FirstEnergy. This marked the first time that the Business Plan was presented to a FirstEnergy representative. Among the Business Plan's various cost-cutting proposals was a workforce reduction. The Business Plan suggested that the reduction could be accomplished through layoffs, attrition, or voluntary retirement.

In December 1999, John Gill, Senior Vice President of Administrative Services of FirstEnergy, directed Richard LaFleur, Director of Employee Benefits of FirstEnergy, to create an early-retirement incentive program for eligible Penn Power and FirstEnergy employees. LaFleur did so, and in January 2000 presented the incentive program to the Compensation Committee of the FirstEnergy Board of Directors (the "Committee") for approval. The program was adopted by the Committee and then implemented by the Retirement Board of the FirstEnergy Pension Plan. Soon thereafter, LaFleur and Gill sent

---

[3] As this is an appeal from the grant of summary judgment, we have viewed the facts in the light most favorable to the plaintiff.

3

a letter dated January 18, 2000 to eligible employees detailing the program.

Rashid then instituted an action in District Court, alleging that the defendants' representation that no such program was forthcoming constituted a breach of their fiduciary duties under 29 U.S.C. § 1104. On May 23, 2005, the District Court granted summary judgment for the defendants. Rashid now appeals that decision.

## II.

The District Court had jurisdiction under 29 U.S.C. § 1132(e)-(f), and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a grant of summary judgment is plenary and we will "affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Mushalla v. Teamsters Local No. 863 Pension Fund*, 300 F.3d 391, 395 (3d Cir. 2002) (internal quotation marks omitted).

## III.

In the exercise of its duties under ERISA, a plan administrator may not make "affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan." *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993). "A plan administrator makes a material misrepresentation when it responds to employee inquiries by representing it is not considering a change to its pension plan, if it is in fact giving 'serious consideration' to a change." *Mushalla*, 300 F.3d at 396 (3d Cir. 2002). "Serious consideration of a change in plan benefits exists when (1) a specific proposal (2) is being discussed for purposes of implementation (3) by

4

senior management with the authority to implement the change." *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1539 (3d Cir. 1996) (hereinafter *Fischer II*). "[T]his formulation does not turn on any single factor." *Id.*

We have explained that "[t]he first element, a specific proposal, distinguishes serious consideration from the antecedent steps of gathering information, developing strategies, and analyzing options." *Id.* at 1539-40. The proposal must be "'sufficiently concrete to support consideration by senior management for the purpose of implementation.'" *Id.* at 1540. Here, in the best-case scenario for Rashid,[4] the first time that a specific proposal concerning an early retirement incentive program arose was during the October 19, 1999 presentation of the proposed Business Plan for 2000 to FirstEnergy's Earl Carey, over three months after Rashid retired. Rashid has presented no evidence that a specific proposal existed prior to that date; up to that point, the Penn Power employees were engaged in the "antecedent steps" described in *Fischer II*. Thus, "[b]ecause a specific proposal did not emerge until [October 19, 1999], serious consideration could not have commenced before this date." *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1549 (3d Cir. 1996).

"Under the second and third factors, we look to whether the specific proposal was

_____

[4] Due to the wide scope of the Business Plan -- which, in addition to its recommendation of a workforce reduction, included recommendations concerning facilities consolidation, productivity improvements, functional consolidation, and validation and trucking -- a strong argument could be made that the Business Plan was too broad and abstract to create a specific proposal about an incentive program.

5

being considered for implementation by senior management." *Id.* at 1550. There is nothing in the record that shows when, if ever, the Business Plan was approved for implementation or explains the process necessary to effectuate that approval or implementation. However, in order to implement the specific change at issue here -- the creation of a new early-retirement incentive program -- the change had to be incorporated into the FirstEnergy Pension Plan. In order to change the Pension Plan, the corporate structure of FirstEnergy required that the change be approved first by Gill of FirstEnergy, then by FirstEnergy's president, and then by the Compensation Committee of the FirstEnergy Board of Directors. Thus, after the Penn Power employees presented the Business Plan (with its proposed incentive program) to Carey on October 19, 1999, a change to the Pension Plan required at least two additional levels of authorization from FirstEnergy officers before it could be proposed to the Committee.[5] While the record does not detail the specific steps that occurred with reference to the Business Plan and the Pension Plan between October 19, 1999, when a FirstEnergy representative first saw the Business Plan, and December 1999, when Gill directed LaFleur to create an incentive program, it was within that time period that the incentive program was first considered for implementation by senior management.

Although we have insufficient information to determine the specific date that the defendants first gave serious consideration to the incentive program, that date

---

[5] To reiterate, it was the separate incentive program subsequently created by LaFleur, not the Business Plan, that the Committee ultimately adopted.

6

indisputably occurred months after Rashid retired, let alone inquired about the program.

Thus, we agree with the District Court that there is no evidence from which a reasonable

jury could find that the defendants breached their fiduciary duties to Rashid.

Accordingly, we will affirm.[6]

---

[6] Rashid also presents the deposition testimony of Josephine Mangiarelli, in which Mangiarelli stated that sometime in 1999 her husband's brother talked to Roger Houk, a former employee of Penn Power, and Houk said that he had heard that an incentive program was imminent. Rashid argues that this demonstrates that some individuals received notice of the incentive program before it was formally announced. However, the statement allegedly made by a company representative informing Houk of the program is hearsay, and neither Mangiarelli nor Rashid has identified the person who made the statement. "Thus, the hearsay statement by this unknown individual is not capable of being admissible at trial, and [can] not be considered on a motion for summary judgment." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996) (internal citation and quotation marks omitted).