OPINION
BARRY, Circuit Judge.
Martha Flory appeals from the July 15, 2008, 2008 WL 2782664, order of the District Court granting summary judgment to Pinnacle Health Hospitals. For the reasons that follow, we will affirm.
I.
Because we write solely for the benefit of the parties, we set forth only those facts necessary to our analysis.
Martha Flory worked as a registered nurse assessment coordinator (“RNAC”) for defendant Pinnacle Health Hospitals (“Pinnacle”), where she was responsible for coordinating insurance activities and gathering information regarding extended care patients. In 1986, Flory suffered a back injury that required spinal fusions, and currently suffers from diabetes, sleep apnea, reflux disease, asthma, muscle spasms, ambulatory dysfunction, shortness of breath, hypoglycemic disease, and fainting spells. For health reasons, Flory requested, and Pinnacle granted, a four-hour workday restriction in 1998. In 2004, Pinnacle shifted her hours to the afternoon to give her sufficient time to attend to personal needs in the morning. In addition, Pinnacle permitted Flory to park her vehicle near the hospital’s rear entrance.
From 2000 to 2005, Flory’s supervisors at Pinnacle observed a pattern of absences — Flory would not report to work in inclement weather (i.e., snow, ice, or significant rain) or if inclement weather was forecast. Flory informed her supervisors that, given her medical conditions, she feared slipping on wet surfaces. Her supervisor in 2000, LeAnn Rock, testified that she counseled Flory about her absences but left Pinnacle before initiating disciplinary measures. According to Flory, Rock’s successors, Jennifer Zufall and Nancy Fridy, also did not initiate disciplinary measures so long as Flory provided documentation from her doctor regarding her absences. The record is silent about any discipline prompted by Flory’s absences until 2005, and she received a positive performance evaluation in June 2004.
In February 2005, Flory was warned verbally by her supervisor, Cathleen Timothy, that she had failed or refused to follow instructions and complete a task within her job assignment.[1] In response, Flory submitted a doctor’s note requesting that she be excused from work in inclement weather. Flory’s supervisors then proposed several ways in which she could get to work in inclement weather, including clearing her sidewalks, taking a taxi or van from her home to the hospital’s covered entrance, providing her with a bus pass, and/or permitting her to make up for missed work on weekends. Flory rejected each of these proposals.
On March 2, 2005, Pinnacle issued a written warning that noted that Floxy had not been at work five times in two weeks, four times due to inclement weather. The warning instructed Flory to x*eport to wox'k on all scheduled days and, when snow was forecast, to arrange to work alternate hours. After Flory failed to heed those instructions, she received a one-day, unpaid suspension on March 9, 2005.
*875 Pinnacle terminated Flory on April 11, 2005. In the conference record explaining that decision, Timothy specified several instances where Flory did not fulfill the requirements of the RNAC position because she failed to make timely determinations as to patients’ Medicare coverage. Timothy wrote, “Martha has repeatedly been counseled on the appropriate procedure for ending Medicare benefits for patients and the necessity of communicating with the team” and that “she has failed to meet that responsibility repeatedly.” (App.84.) Flory also allegedly failed to “maintain a professional attitude and demeanor and communicate effectively” with her coworkers. (Id.) Timothy noted, as well, that Flory called in sick from April 4 to April 8, 2005. Timothy and Glenda Galey, a Pinnacle personnel representative, both stated that the absences noted in the conference record were not a basis for Flory’s termination, but rather served to explain the delay from the last incident of misconduct to her termination.
In addition to challenging her termination, Flory stated in her Complaint and at her deposition that two of her colleagues were earning a higher hourly rate. With respect to one colleague, Laurie Snyder, the evidence demonstrated that when she assumed her role as an RNAC, she maintained her prior hourly salary. With respect to a second colleague, Charlotte Barrett, Flory stated in her deposition that she saw one of Barrett’s paychecks and that Barrett earned a higher salary. Flory presented no other evidence on the subject.
Over the course of her employment and after her termination, Flory filed a total of five complaints alleging disability discrimination against Pinnacle with the Pennsylvania Human Rights Commission (“PHRC”).
II.
Flory filed suit in the District Court, alleging disparate treatment, retaliation, and unequal pay, all on account of her disability, in violation of the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 12101 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Pennsylvania Human Relations Act (“PHRA”), 43 Pa. Cons.Stat. Ann. § 951 et seq.[2] The Court granted Pinnacle’s motion for summary judgment on all three causes of action, concluding that Flory: (1) failed to establish that she was “qualified” for her position as required for her discriminatory discharge and pay claims; and (2) failed to allege a temporal link between her protected activity and her termination as required for her retaliation claim.
We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a grant of summary judgment is plenary. Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir.2003). We view the underlying facts, and all reasonable inferences arising therefrom, in the light most favorable to the non-movant. Fasold v. Justice, 409 F.3d 178, 180 (3d Cir.2005).
A.
Under the ADA, “[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to ... discharge of employees, employee compensation ... and other terms, conditions, and privileges of employment.” 42 U.S.C. § 12112(a).
*876 To establish a prima facie case of disparate treatment, a plaintiff must demonstrate that he or she: (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of that disability. Turner v. Hershey Chocolate USA 440 F.3d 604, 611 (3d Cir.2006). In dismissing this claim, the District Court held that Flory failed to establish that “she could perform the essential function of regularly coming to work” and, therefore, had not demonstrated that she was a “qualified individual.” (App.9.) The Court relied on Smith v. Davis, where we stated that “[a]n employee who does not come to work on a regular basis is not ‘qualified.’ ” 248 F.3d 249, 251 (3d Cir.2001) (citing Tyndall v. Nat’l Educ. Ctrs., 31 F.3d 209, 213 (4th Cir.1994)). However, in Tyndall, on which Smith relied, the Fourth Circuit was more equivocal: “An employee who cannot meet the attendance requirements of the job at issue cannot be considered a ‘qualified’ individual protected by the ADA.” 31 F.3d at 213 (emphasis added).
Flory has set forth sufficient evidence from which a reasonable factfinder could conclude that she was “qualified” for the RNAC position despite her frequent absences. While Pinnacle maintains a policy against unexcused absenteeism, the record demonstrates that Flory worked for five years — from 2000 to 2005 — under various supervisors without her absences prompting any discipline. Throughout that period, when asked, Flory presented medical evidence of her condition, which apparently satisfied Pinnacle’s requirement that absences be “excused or preapproved by the supervisor/department manager.” (App.85.) Moreover, although we do not have a record of her absences prior to her 2004 performance review, it does not appear that her attendance significantly impacted her performance. By 2004, according to her review, she had “developed skills consistent with the RNAC job requirements.” (App.76.) At the very least, that review does not reference a negative impact on Flory’s work due to absenteeism.
Under the ADA, a qualified individual is a person with a disability who, “with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.” 42 U.S.C. § 12111(8) (emphasis added). The record indicates that Pinnacle, despite its official attendance policy, accommodated Flory for five years before initiating disciplinary action against her, albeit for other stated reasons. We need not decide, however, whether the evidence of past accommodation is such that her later absenteeism could also have been addressed by further accommodation. Even if we assume that Flory was not disqualified by virtue of her absenteeism, we nevertheless conclude, for the reasons that follow, that she cannot prevail on her discrimination claim.
Assuming arguendo that Flory has established a prima facie case of discrimination,[3] we turn to the now-familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under McDonnell Douglas, after a plaintiff has established a prima facie case of disparate treatment, the burden shifts to the defendant to state a legitimate, nondiseriminatory reason for its action. If the defendant meets that burden, the presumption of discriminatory action raised by the prima facie case is rebutted. The plaintiff may respond by showing that the defendant’s proffered reason was a pretext for the disparate treatment.
*877 “[M]ost cases turn on the third stage, ie., can the plaintiff establish pretext.” Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir.1999). To prove that a defendant’s explanation is pretextual, a plaintiff must “ ‘cast[ ] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication ... or ... allow[ ] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.’ ” Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir.2007) (quoting Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir.1994)) (omission in original). A plaintiff may defeat summary judgment by either “ ‘(i) discrediting the employer’s proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.’ ” Id. (quoting Fuentes, 32 F.3d at 764).
Pinnacle submitted evidence that Flory was terminated for willful misconduct, not because of her disability. On that point, the April 11, 2005 conference record regarding her “[o]n-going [p]erformance [deficiency” is illuminating. (App.83.) That report — which precipitated her termination — specified several instances where she did not fulfill the requirements of the RNAC position by failing to make timely determinations as to patients’ Medicare coverage and speaking with hostility to her supervisors. The conference record stated: “A pattern of ineffective communication has been demonstrated. [Flory] has repeatedly been counseled on the appropriate procedure for ending Medicare benefits for patients and the necessity of communicating with the team about the determination. It is [Flory’s] responsibility to ensure that this occurs and she has failed to meet that responsibility repeatedly.” (App.84.)
Even viewing the evidence in the light most favorable to Flory, there is simply no evidence — either direct or circumstantial— from which a factfinder could either disbelieve Pinnacle’s articulated non-discriminatory reasons or conclude that discrimination on account of her disability was a motivating or determinative factor in her termination.[4]
B.
Flory alleges that two RNACs hired after her were paid at a higher hourly rate “in an attempt to punish or discriminate against [her].” (App.162.) The evidence demonstrates that Snyder, who performed the same job function as Flory, earned an hourly rate greater than Flory’s. No admissible evidence was presented as to Barrett’s hourly wage. See Philbin v. Trans Union Corp., 101 F.3d 957, 961 n. 1 (3d Cir.1996) (noting that only evidence admissible at trial may be considered in ruling on motion for summary judgment).
Flory has not established a prima facie case of disparate pay. Pinnacle contends that Snyder was paid at a rate consistent with her prior employment. Flory offers no evidence as to why such a legitimate, non-discriminatory reason is pretextual.
C.
To establish a prima facie case of retaliation, a plaintiff must show: “(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee’s protected activi *878 ty; and (3) a causal connection between the employee’s protected activity and the employer’s adverse action.” Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir.2002).
Flory’s claim fails as a matter of law. The only evidence she submitted with respect to the causal connection between her protected activity and her termination is the fact that two years prior to her termination, she filed four complaints with PHRC.[5] This, without more, is clearly not enough. A span of mere months, let alone years, between the protected activity and the adverse action is insufficient to raise an inference of causation. See Le-Boon v. Lancaster Jewish Cmty. Ctr. Ass’n, 503 F.3d 217, 233 (3d Cir.2007) (“[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.”), cert. denied, — U.S.-, 128 S.Ct. 2053, 170 L.Ed.2d 793 (2008); Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir.2007) (five-month time period, without additional evidence, insufficient to raise inference of causation).
III.
For the reasons stated above, we will affirm the order of the District Court.

. Pinnacle has a progressive disciplinary program in which a verbal warning is followed by a written warning, a suspension, and, finally, termination. Cei'tain acts, such as insubordination, may result in immediate termination.

. Claims of employment discrimination in violation of the Rehabilitation Act are governed by ADA standards. See 29 U.S.C. § 794(d). Likewise, the analysis of an ADA claim applies equally to a PHRA claim. See Williams v. Phila. Hous. Auth. Police Dep’t., 380 F.3d 751, 761 n. 6 (3d Cir.2004). Accordingly, we need address only Flory’s ADA claim.

. The parties do not dispute Flory's disability. Moreover, for ease of analysis, we will assume that Flory suffered an adverse employment decision because of her disability.

. Although the District Court did not conduct a McDonnell Douglas burden-shifting analysis, we may affirm on "any grounds supported by the record.” Nicini v. Morra, 212 F.3d 798, 805 (3d Cir.2000) (en banc).

. The fifth and final complaint filed by Flory was received by Pinnacle on May 27, 2005, more than one month after her termination ance thus, could not have been the basis of any retaliation.